**NONPRECEDENTIAL DISPOSITION**

To be cited only in accordance with Fed. R. App. P. 32.1

# United States Court of Appeals

### For the Seventh Circuit
### Chicago, Illinois 60604

Argued November 3, 2010
Decided November 18, 2010

## Before

FRANK H. EASTERBROOK, *Chief Judge*

ANN CLAIRE WILLIAMS, *Circuit Judge*

REBECCA R. PALLMEYER, *District Judge**

| | |
|---|---|
| No. 10-1659 <br><br> SCOT VINCE, <br>     *Plaintiff-Appellant*, <br><br> *v.* <br><br> ROCK COUNTY, WISCONSIN, *et al.*, <br>     *Defendants-Appellees*. | Appeal from the United States District Court for the Western District of Wisconsin. <br><br> No. 08-cv-591-slc <br> Stephen L. Crocker, *Magistrate Judge*. |

## Order

Scot Vince, who has helped police and investigators by providing information and testimony, did not go straight. In October 2005 he was arrested and jailed pending trial. While in jail he was attacked by other inmates, who recognized him as an informant. Vince alleges that, before the other inmates set upon him, they chanted "Beat him" and proclaimed that they would kill him. Vince contends that guards heard this but ignored it and spurned his pleas for protective custody. He filed this suit under 42 U.S.C. §1983 seeking damages for the injuries he sustained.

He did not, however, sue any of the jail's staff. Instead he sued Tom Niman, an investigator for a local prosecutor's office, and Lorenzo Henderson, the police officer who arrested him—plus Rock County (which employed Niman) and the City of Beloit (which employed Henderson). Neither Niman nor Henderson decided to put Vince in the general population rather than administrative segregation; neither Niman nor Henderson knew that any other inmate had threatened Vince. Indeed, Niman did not know that Vince had been arrested. Vince supplied information to Niman in the past, and in August 2005 Niman had arranged for Vince to be held in protective custody during an

---

\* Of the Northern District of Illinois, sitting by designation.

earlier arrest. Niman's good deed in August 2005 does not expose him to liability for events in October 2005 about which he was ignorant. As for Henderson: an arresting officer does not control where a detainee will be housed. The district court concluded that Vince had sued the wrong people and entered summary judgment in favor of the defendants. 2009 U.S. Dist. LEXIS 115245 (W.D. Wis. Dec. 10, 2009).

Vince's perspective is summed up in the first two sentences of the caption to his brief's argument section: "Law enforcement officials, including jail personnel, are required to take reasonable measures to guarantee the safety of pretrial detainees. Defendants, individually and collectively, denied plaintiff this right by failing to [e]nsure that he was placed in administrative segregation". This suggests absolute liability, perhaps with a fallback to the negligence standard. But the Supreme Court rejected that approach in *Farmer v. Brennan*, 511 U.S. 825 (1994). The Court held that public officials can be liable only if they actually know of the risk, intend that the inmate come to harm, and fail to take steps to avert the harm. "Deliberate indifference," a version of criminal recklessness, can supply the required intent. (*Farmer* concerned the eighth amendment; Vince does not contend that the fifth amendment, which applies to pretrial detainees, see *Bell v. Wolfish*, 441 U.S. 520 (1979), employs a different standard.) It may be that the guards on duty the night of Vince's injury could be held liable under *Farmer*. But none of them is a defendant. Niman, who did not know that Vince had been arrested, and Henderson, who was not a jailer, cannot be liable.

As for the City and the County: they are responsible for their own policies, but not vicariously liable for the guards' conduct. See *Monell v. New York City Department of Social Services*, 436 U.S. 658 (1978). The policies of the City and County are unexceptionable. They endeavor to protect detainees from their enemies (Vince had a list of enemies, and he was assigned to a cell block that did not contain any) and will segregate informants when they know of the risk (which is why Niman was able to ensure Vince's safety during his confinement in August 2005). Vince's argument that the City and County had to do more—had to ensure, for example, that what Niman knew was recorded in the computerized cell-assignment system for use in any later arrest—is just another version of the theme that recovery can be had under ordinary tort law. Section 1983 does not duplicate state tort law.

What happened to Vince led the City and County to make changes that they hope will better protect informants. For example, the form that Beloit's police now employ when making an arrest has a space that can be used to record an arrestee's claim to be an informant; personnel at the jail then may check the veracity of the claim and use the information to reduce the risk in housing assignments. But evidence of these changes isn't admissible in support of an argument for liability, see Fed. R. Evid. 407, and Vince has not cited any judicial decision supporting the proposition that local governments are constitutionally obliged to credit every incoming prisoner's unsupported claim to be at risk as an informant, and to provide a foolproof system of protecting each inmate from others who may have learned that a newcomer's loyalties are not entirely with the criminals. Cf. *Riccardo v. Rausch*, 359 F.3d 510, amended, 375 F.3d 521 (7th Cir. 2004).

AFFIRMED